# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JOHN E. HANING,**

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Case No. 2:17-cv-278
**JUDGE JAMES L. GRAHAM**
**Chief Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Plaintiff, John E. Haning, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security disability benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case.

## I. BACKGROUND

Plaintiff filed his application for benefits on November 1, 2013, alleging that he has been disabled since August 11, 2009.[1] (R. at 278–84.) Plaintiff's application was denied initially and upon reconsideration. (R. at 216–24, 226–32.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 233–34.) Administrative Law Judge John M. Wood ("ALJ") held a video hearing on March 10, 2016, at which Plaintiff, who was represented by counsel,

---

[1] Plaintiff later amended his alleged onset date to January 1, 2014. (R. at 61, 158, 314.)

appeared and testified. (R. at 160–79.) On March 30, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 61–72.) On February 13, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–4.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY[2]

### A. Plaintiff's Testimony

Plaintiff testified at the administrative hearing that he is 55 years old, married, and lives with his wife. (R. at 161.) He has no children and is an Army veteran. (R. at 164.) Plaintiff does not have a GED, as the highest grade education he completed was tenth grade. (R. at 162.) Before his stomach surgery in 2009, Plaintiff primarily worked as a construction laborer. (*Id.*)

Plaintiff agreed that he has a history of bladder issues and that he has had multiple bladder procedures. (R. at 178.) He stated that he currently self-catheterizes three times a week, typically in the morning. (R. at 178–79.) Plaintiff testified that it burns when he urinates and his stomach hurts when his bladder is full and he moves around in bed. (R. at 179.) Plaintiff urinates "quite often." (*Id.*)

### B. Vocational Expert Testimony

Linda Jones testified as a vocational expert ("VE") at the March 10, 2016, administrative hearing administrative hearing. (R. at 180–86.) The ALJ proposed a hypothetical that presumed an individual who was limited to light levels of exertion and limited to no climbing of ladders, ropes, or scaffolds, no crawling; other postural functions could be performed occasionally; only occasional pushing or pulling with the dominant upper extremity; only occasional overhead

---

[2] The Court limits its analysis of the evidence and the administrative decision to the issues raised in the Statement of Errors.

reaching with the dominant upper extremity; need to avoid environmental hazards such as unprotected heights, dangerous machinery; need to avoid concentrated exposure to extreme temperatures, to humidity, and to pulmonary irritants. (R. at 181.) The VE testified agreed that Plaintiff's past work was precluded. (*Id.*) Presuming an individual with Plaintiff's age, education, and work experience, the VE testified that there would be no transferrable skills because Plaintiff primarily performed labor, not supervisory work. (R. at 181–82.) The VE testified that the hypothetical individual could perform unskilled light work that existed in significant numbers in the local and national economies, including work as a mail clerk, cashier, and retail salesperson. (R. at 182.) The VE testified that the position of mail clerk would have some opportunity for positional change as well as other light jobs such as receptionist, information clerk, and couriers/messengers, and that these jobs existed in significant numbers in the local and national economies. (R. at 182–83.)

### III. MEDICAL RECORDS

#### A. Records from Veterans Affairs Medical Center in Chillicothe, Ohio

In January 2014, Plaintiff complained of chronic pain due to interstitial cystitis that was unresponsive to opioids. (R. at 995.) However, on the same day it was noted that a urologist in October 2013, had concluded that Plaintiff's pain in the right inguinal region were not related to Plaintiff's interstitial cystitis. (*Id.*) In March 2014, Plaintiff reported bladder pain and that he self-catheterizes three times a week and that the spasms are better after catheterization. (R. at 1019, 1021, 1025.) It was recommended that Plaintiff continue to follow up with the urologist, submit to future laboratory testing, and follow up in one year. (R. at 1026–27.) In June 2014, Plaintiff complained of pain in his bladder wall due to interstitial cystitis. (R. at 995.)

3

**B.     State-Agency Evaluations**

On March 26, 2014, Stephen Sutherland, M.D., a state-agency physician, reviewed Plaintiff's medical record. (R. at 188–199.) Dr. Sutherland noted that Plaintiff suffered from, among other things, chronic pain and bladder tumors, which require a catheter. (R. at 192.) Dr. Sutherland found Plaintiff "[p]artially credible" as it related to Plaintiff's professed inability to lift more than two pounds or walk more than 25 to 30 feet, as the exam findings revealed that he has a normal gait, SLR negative, no assistive device, no atrophy, and intact sensation. (R. at 194.) Dr. Sutherland went on to identify several environmental limitations, including "ease of access to toileting facilities which are clean and afford privacy to perform self-catheterization." (R. at 197.) Dr. Sutherland concluded that Plaintiff had a functional capacity for performing light work. (R. at 198.)

On May 16, 2014, Sreenivas Venkatachala, M.D.,[3] a state agency physician, reviewed the record upon reconsideration. (R. at 201–11.) Dr. Venkatachala agreed that Plaintiff had the functional capacity to perform light work (R. at 210) and similarly found that Plaintiff should "have easy accessibility to bath room facilities due to interstitial cystitis." (R. at 209.)

## IV.     ADMINISTRATIVE DECISION

On March 30, 2016, the ALJ issued his decision. (R. at 61–72.) At step one of the sequential evaluation process,[4] the ALJ found that Plaintiff had not engaged in substantially

---

[3] The ALJ and Plaintiff erroneously refer to M. Ruiz, M.D. as the other state-agency physician. The Undersigned attaches no significance to this error as the ALJ and Plaintiff refer to the correct portion of the administrative record, Exhibit 3A (R. at 201–11), when referring to the state-agency reconsideration. (R. at 70; ECF No. 12 at 9–10; ECF No. 14 at 3.)

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

gainful activity during the period from his amended alleged onset date of January 1, 2014, through his date last insured of September 30, 2014. (R. at 63.)

At step two, the ALJ determined that Plaintiff had the severe impairments of a spine disorder with right shoulder involvement; a urinary disorder; and chronic obstructive pulmonary disease ("COPD"). (*Id.*)

The ALJ next found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 64.) In connection with this finding, the ALJ specifically noted that he reviewed and considered SSR 15-1p on interstitial cystitis. (R. at 64.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that from January 1, 2014, through September 30, 2014, the claimant had the residual functional capacity to lift and/or carry 20 pounds occasionally, and 10 pounds frequently; stand and/or walk up to 6 hours in an 8 hour work day; and sit up to 6 hours in an 8 hour work day. The claimant would have had the opportunity to alternate between a standing and seated position periodically thought the work day, with an aggregate of equal time, if desired. The claimant could not crawl, or climb ladders, ropes, or scaffolds; but could occasionally climb ramps and stairs;

---

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

and occasionally balance, stoop, kneel and crouch. He was limited to occasional pushing and/or pulling, and occasional overhead reach with the dominant right upper extremity. In addition, he needed to avoid hazards, such as unprotected heights and dangerous machinery; as well as concentrated exposure to pulmonary irritants, humidity, and temperature extremes.

(R. at 64.)

In assessing the foregoing RFC, the ALJ assigned "great weight" to the state-agency assessments:

> Regarding the opinion evidence, great weight has been given to the assessments by State agency physicians, Stephen Sutherland, M.D., and M. Ruiz, M.D., both of whom determined that the claimant was capable of the equivalent of "light" exertional work, with other manipulative, push/pull, postural and environmental limitations, as reflected herein (Exhibits 1A; 3A; Social Security Ruling 96-6p). Security Ruling 96-6p). Although the undersigned finds these assessments are consistent with the objective medical evidence of record, at the same time, the undersigned finds evidence received after these assessments were put forth supports a sit/stand option.

(R. at 70.)

Relying on the VEs' testimony, the ALJ concluded that Plaintiff cannot perform past relevant work as a house repairer or construction worker. (R. at 71.) However, the ALJ went on to find that Plaintiff can perform other jobs existing in significant numbers in the national economy. (R. at 71–72.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 72.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff advances two contentions of error. The Court finds Plaintiff's first assignment of error—that the RFC did not account for the limitations imposed by Plaintiff's urinary impairment—to be meritorious.[5]

---

[5]Because this finding obviates the need for analysis of Plaintiff's remaining assignment of error as to the evaluation of Plaintiff's reported symptoms (formerly known as the credibility determination), the Undersigned need not, and does not resolve whether this alternative basis supports reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's

7

Here, Plaintiff specifically contends that the ALJ erred when he failed to include the accommodation identified by both state-agency physicians of ease of access to toileting facilities and did not explain his failure to do so. (ECF No. 12 at 9–11; ECF No. 14 at 3.) The Commissioner, however, argues that Plaintiff waived this argument because "he made no such claim before the ALJ." (ECF No. 13 at 5–7.)

The Commissioner's argument is not well taken. As a preliminary matter, the Court agrees with Plaintiff that he could not have waived his challenge at the hearing because he could not have known the amount of weight the ALJ would assign the opinions of any physician of record until the decision was issued. (ECF No. 14 at 3.) Moreover, the Undersigned notes that in his brief to the Appeals Council, Plaintiff complains that the ALJ did not account for any limitation in his RFC for Plaintiff's urinary disorder and failed to explain why such limitations would be unnecessary. (R. at 396.) Based on this record, the Undersigned is not persuaded that Plaintiff has waived his challenge to the ALJ's articulated RFC.

Turning to the merits of Plaintiff's RFC argument, a plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

---

remaining assignment of error if appropriate. *Cox v. Comm'r of Soc. Sec.*, No. 2:13-cv-1203, 2015 WL 1000648, at *3 n.1 (S.D. Ohio Mar. 5, 2015).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Here, as discussed above, the ALJ gave "great weight" to the opinions of the state-agency physicians. (R. at 70.) The ALJ specifically noted that these physicians imposed environmental limitations and found these, among other limitations, were "consistent with the objective medical evidence of record[.]"[6] (*Id.*) The ALJ, therefore, appeared to adopt the state-agency physicians' opinions in total. (*Id.*)

However, even though the ALJ gave "great weight" to the state-agency physicians' assessments and concluded that their articulated environmental limitations were "consistent with the objective medical evidence of record," the ALJ did not include a limitation of easy access to bathroom facilities. (*Id.*) Nowhere in his opinion does he explain why he failed to incorporate the state-agency physicians' limitations even though he gave their assessments great weight. While it is true that the ALJ "is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding[,]" *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009), the ALJ must nevertheless explain why he failed to include articulated limitations where he has found that the RFC is consistent with that medical opinion. *See*, *e.g.*,

---

[6] While the ALJ went on to find that evidence received after these state-agency assessments supported a sit/stand restriction (*id.*), the parties agree that this restriction was not included to accommodate Plaintiff's urinary disorder / interstitial cystitis. (ECF No. 12 at 9–10; ECF No. 13 at 6 n.2.)

9

*Howard v. Comm'r of Soc. Sec.*, No. 2:16-cv-1104, 2018 WL 852361, at *5–6 (S.D. Ohio Feb. 14, 2018) (recommending remand where, *inter alia*, ALJ "appeared to adopt Dr. Swearingen's opinion but failed to explain why he did not incorporate the limitations Dr. Swearingen assessed into Plaintiff's mental RFC") (collecting cases), *adopted by* 2018 WL 1136927 (S.D. Ohio Mar. 1, 2018); *Reed v. Comm'r of Soc. Sec.*, No. 1:16-CV-572, 2017 WL 1531872, at *6 (W.D. Mich. Apr. 28, 2017) (remanding case where, *inter alia*, "[t]he ALJ did not explain why he did not adopt this portion of the opinion [doctor's opinion as to the plaintiff's limitations] despite giving it great weight"); *Kolasa v. Comm'r of Soc. Sec.*, No. 13–cv–14311, 2015 WL 1119953, at *10 (E.D. Mich. Mar. 11, 2015) (remanding where, *inter alia*, the ALJ gave considerable weight to the state-agency consultant's opinion, "but he did not discuss why he omitted the occasional handling and fingering limitation and instead adopted the less restrictive frequent limitation, as required by SSR 96–8p"). The ALJ's failure to do so in this case renders this Court unable to assess the ALJ's reasoning and understand why he did not incorporate the state-agency physicians' limitations in his RFC. *See* S.S.R. 96–8p, 1996 WL 374184, at *6–7; *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).

## VII. CONCLUSION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: July 2, 2018
          *s/ Elizabeth A. Preston Deavers*
          ELIZABETH A. PRESTON DEAVERS
          UNITED STATES MAGISTRATE JUDGE